UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

MIKE POP,

        Plaintiff,

v.

                                                  **COMPLAINT and JURY DEMAND**

BROOKFIELD CHRYSLER DODGE JEEP,
INC., a Michigan corporation; ANDREW
BEAM; AUSTIN FROBERG; ALEX
POVENZ; EVAN SMITH: GREGORY
GUNTHER; and ANTHONY TURNER,

        Defendants.

Anthony J. Valentine (P32840)
Attorney at Law
Co-Counsel for Plaintiff
29 Pearl Street, NW, Ste. 227
Grand Rapids, MI 49503
(616) 288-5410
*tonyvalentinelaw@gmail.com*

Steven J. Vander Ark (P32471)
Co-Counsel for Plaintiff
29 Pearl Street NW, Ste. 145
Grand Rapids, MI 49503
(616) 288-5410
*steve.vanderark@gmail.com*

      Plaintiff, Mike Pop, by and through his attorneys and for his Complaint against the

Defendants, says:

**Introduction**

1.      Defendant Brookfield Chrysler Dodge Jeep, Inc. ("Brookfield"), sells motor vehicles to consumers in credit transactions, using retail installment sales contracts.

2.      A typical credit transaction is initiated when a Brookfield employee helps the consumer complete a simple credit application.  Brookfield then obtains the consumer's credit report.  Brookfield then attempts *via* the internet, fax or other means to obtain the tentative approval of an investment company that specializes in purchasing motor vehicle retail installment sales contracts to purchase the contract from Brookfield and "fund" the deal.  Funding usually takes place pursuant to pre-existing agreements between Brookfield and various investment companies.  These agreements state the terms under which each investment company will purchase contracts from Brookfield.  The preliminary arrangement of the investment company to purchase a particular contract from Brookfield is merely conditional and will specify additional terms ("stipulations") which must be met before the investment company will actually purchase the contract from Brookfield.  Typical stipulations include a subsequent telephone interview of the consumer by an employee of the investment company, and verification of the consumer's residency, employment and income.

3.      Once Brookfield has received an investment company's tentative approval to purchase the contract, Brookfield tells the consumer that he/she has been "approved for financing".  If the consumer agrees to purchase a vehicle, a Brookfield employee prepares the retail installment sales contract and other documents related to the transaction.  The consumer signs the documents, becomes the owner of the vehicle, and takes delivery of the vehicle.

4.      Problems occur when Brookfield later finds itself unable to satisfy all of the stipulations required by the investment company and the investment company refuses to purchase

2

the contract from Brookfield.  Although Brookfield's contract with the consumer contains no lawful provision conditioning the sale of the vehicle or Brookfield's extension of credit upon Brookfield's subsequent sale of the contract, Brookfield sometimes will refuse to hold the retail installment sales contract and honor Brookfield's contract with the consumer, which results in an illegal "spot delivery" or "yo-yo" transaction.  Brookfield may attempt to coerce the consumer into providing additional paperwork, may require the consumer to provide a co-borrower, or may require the consumer to sign additional contracts on different terms.  Alternatively or eventually, Brookfield will breach the contract and demand that the consumer return the vehicle to Brookfield, sometimes with the threat of repossession, ruining credit or even so far as accusing the consumer of stealing the vehicle or threatening to file a police report and have the consumer arrested.

5.      In a widely distributed May 22, 1989 Opinion Letter, the Michigan Department of Commerce, Financial Institutions Bureau stated that in the Bureau's opinion, it is unlawful for a motor vehicle installment seller to condition a sale on the seller's subsequent success in selling the retail installment contract to a third party purchaser of the contract.

6.      In Bulletin 2013-08-CF, the Michigan Department of Insurance and Financial Services makes clear that in the context of a "spot delivery" as it relates to the Motor Vehicle Sales Finance Act, MCL 492.101, *et. seq.*, "Failure to locate financing or an assignee on the part of the seller generates insecurity in the seller which induces the seller to void or accelerate the contract. This is manifestly contrary to the aforementioned portion of the MVSFA."  The Bulletin concludes, "spot delivery practices engaged in by motor vehicle installment sellers violate the Motor Vehicle Sales Finance Act."  Michigan Dept. of Industry and Financial Services Bulletin 2013-08-CF.

3

7.     The State of Michigan also warns consumers about spot delivery, stating: "[T]he dealer has the choice whether to assign the contract. The dealer has sole control over the effort it will make to assign a contract… A motor vehicle installment sale contract conditioned upon the contract's assignment to a finance company violates the [Motor Vehicle Sales Finance Act]. Such a provision is not enforceable… [T]he contract is <u>not</u> void. It is legally enforceable. You are still responsible for making the payments as required by the contract. If the dealer requests that you return to sign a new contract, you are not required to do so." Consumer Information, Michigan Dept. of State 4-11-00.

8.     Similarly, the Michigan Secretary of State Dealer Manual, § 3-3.4. states that "a finance contract is between the purchaser and the dealer. Typically, the dealer assigns the Motor Vehicle Installment Sales Contract to a finance company and then places a lien on the vehicle's title to secure payment. If the finance company subsequently rejects the loan contract after interest in the vehicle transfers to the purchaser, it becomes the dealer's responsibility to offer financing to the purchaser under the same terms (e.g., interest rate, payment schedule, etc.) as the original finance contract. This may require that the purchaser make the payments directly to the dealer." The manual expressly warns: *"It is a violation of state law to attempt 'repossession' of a vehicle after delivery or to change the terms of the finance contract if a finance company refuses the contract after a spot delivery."* The Michigan Secretary of State Dealer Manual is available at:

https://www.michigan.gov//media/Project/Websites/sos/01preston/Dealer_Manual_Chapt er_3.pdf?rev=bb211ad0719e402cb07f731ccd333bae

9.     Plaintiff Mike Pop is a victim of Brookfield's unlawful spot delivery/yo-yo practices. Many state and federal laws may be violated when a car dealer engages in this most unfair and deceptive practice. Brookfield has violated the federal Equal Credit Opportunity Act,

4

15 U.S.C. § 1691, *et seq.,* the federal Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*
Brookfield has also violated Michigan's Motor Vehicle Installment Sales Contract Act, M.C.L. §
566.301, *et seq.,* Michigan's Conversion Statute, M.C.L. § 600.2919a, committed common law
conversion, as well as breaching its contract with Mr. Pop and harming him in other ways.

10.     Mike Pop obtained title to and drove the vehicle in question, a Jeep Gladiator, off
the Brookfield lot in mid-November 2021. Despite seeking any available civil remedies for any
alleged breach of contract or retention of the Jeep by Mike Pop, five months later in April 2022,
Brookfield agents provided false and misleading information to the Benton Township Police
Department claiming that the vehicle was "owned" by Brookfield and had been stolen by Mike
Pop.  The Defendant police officer knew or could easily have ascertained that such information
was false and utilized such false information to pursue criminal prosecution of Mike Pop.  The
effect of this malicious prosecution was the false arrest and imprisonment of Mike Pop without
probable cause and seizure of his property without due process, all contrary to the Fourth and
Fourteenth Amendment of the United States Constitution and a violation of his civil rights under
42 U.S.C. § 1983.

### Jurisdiction and Venue

11.     This Court has jurisdiction under 28 U.S.C. § 1331 and has supplemental
jurisdiction regarding Plaintiff's state law claims under 28 U.S.C. § 1367.  Declaratory relief is
available pursuant to 28 U.S.C. §§ 2201 and 2202.

12.     This Court has jurisdiction under 15 U.S.C. § 1691e(f) of Plaintiff's claims under
the Equal Credit Opportunity Act, including under 15 U.S.C. § 1691e(c) of Plaintiff's claims for
equitable and declaratory relief under that Act.

13.     This Court has jurisdiction under 15 U.S.C. § 1681p of Plaintiff's claims under the

Fair Credit Reporting Act.

14.     This Court has jurisdiction over Plaintiff's civil rights claims pursuant to 28 U.S.C.

§§ 1331 and 1343(a)(3), and 42 U.S.C. § 1983.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 and for the reason that

the pertinent events took place in this District.

## Parties

16.     Plaintiff Mike Pop is an adult citizen of the United States, residing in the City of

Hartford in Van Buren County, Michigan.

17.     Defendant Brookfield is a Michigan domestic profit corporation (ID # 06726T)

licensed by the Secretary of State for the State of Michigan to sell motor vehicles at retail  (License

# A000223)  and licensed by the Department of Insurance and Financial Services of the State of

Michigan as a motor vehicle dealer originating installment sales contracts to customers purchasing

motor vehicles in credit transactions.  Defendant Brookfield is licensed by the State of Michigan

as an installment seller (License # IS-0021006).  As such, Brookfield, a corporation doing business

in Michigan which by statute and condition of licensing, may be served through its irrevocable

resident agent, the Bureau of Regulatory Services, Business Licensing and Regulation Division,

Richard H. Austin, Building – 3rd Floor, 430 W. Allegan Street, Lansing, MI 48918.

18.     At all times relevant hereto, Brookfield in the ordinary course of its business

engaged in the sale of motor vehicles to customers, regularly extended or offered credit to

customers who purchased motor vehicles, and regularly executed retail installment sales contracts

for which a finance charge is or may be imposed or which by written agreement is payable in four

or more installments, and is the person to whom the transaction which is the subject of this action

is initially payable.

19.     Defendant Andrew Beam (hereafter "Beam") is an individual residing in the City of Benton Harbor, Berrien County, Michigan and was, at all times relevant hereto, a manager/employee of Defendant Brookfield.

20.     Defendant Austin Froberg (hereafter "Froberg") is an individual residing in the City of Watervliet, Berrien County, Michigan and was, at all times relevant hereto, a salesman/employee of Defendant Brookfield.

21.     Defendant Alex Povenz (hereafter "Povenz") was, at all times relevant hereto, employed by the Benton Township Police Department as a law enforcement officer and was acting under color of state law within the course and scope of his employment.

22.     Defendant Evan Smith (hereafter "Smith") was, at all times relevant hereto, employed by the Benton Township Police Department as a law enforcement officer with a rank of Sergeant and was acting under color of state law within the course and scope of his employment.

23.     Defendant Greg Gunther (hereafter "Gunther") was, at all times relevant hereto, employed by the Van Buren County Sheriff's Department as a law enforcement officer and was acting under color of state law within the course and scope of his employment.

24.     Defendant Anthony Turner (hereinafter "Turner") was, at all times relevant hereto, employed by the Van Buren County Sheriff's Department as a law enforcement officer and was acting under color of state law within the course and scope of his employment.

**Facts**

**Purchase/Sale of Motor Vehicle.**

25.     On Thursday, November 11, 2021, Mr. Pop went to Brookfield to explore purchasing a motor vehicle.

26.     Mr. Pop was shown a white Dodge pickup truck in which he expressed an interest.

7

27.    The Brookfield sales representative indicated that he would start the paperwork and Mr. Pop provided the requested information for a credit application.

28.    Mr. Pop advised the sales representative that his wife wanted to see the pickup truck before he committed to purchasing it. Mr. Pop stated that he and his wife would come back the next day.

29.    Mr. Pop and his wife returned to Brookfield on Friday, November 12, 2021.  They advised the sales representative that instead of the white Dodge truck, they were interested in a 2021 Jeep Gladiator that was on the Brookfield lot.

30.    Mr. Pop and his wife were shown a 2021 Jeep Gladiator with 9,620 miles (VIN 1C6JJTEG2ML544987) ("Jeep").  Mr. Pop said that he would like to purchase the Jeep.

31.    The sales representative advised Mr. Pop and his wife that this would not be a problem.  Mr. Pop was asked for a $3,000.00 deposit, which he provided to Brookfield.  **(Exhibit 1)**

32.    The Brookfield sales representative advised Mr. Pop and his wife that he would prepare the paperwork for the Jeep and Mr. Pop could return on Monday, November 15, 2021, to complete the transaction and he could drive the Jeep off of the lot.

33.    Mr. Pop returned to Brookfield on Monday, November 15, 2021.

34.    Brookfield prepared and provided Mr. Pop a Retail Installment Sales Contract for purchase by Mr. Pop of the Jeep ("RISC"). **(Exhibit 2)**

35.    The RISC was signed by an agent of Brookfield and signed by Mr. Pop.

36.    The RISC provided  a cash purchase price for the Jeep of $59,232.80.

37.    The RISC provided that Mr. Pop was to make 84 monthly installment payments of $824.34 to Seller Brookfield beginning December 30, 2021.

8

38.     The RISC identified Brookfield as the "Seller – Creditor (or sometimes "we" or "us")."

39.     The RISC provided in relevant part:

> This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.

40.     The RISC contained no provision making the contract or its enforceability contingent upon the sale or assignment of the RISC by Brookfield to a third-party investment company.

41.     Brookfield prepared a Michigan Secretary of State (Form RD-108) Application for Michigan Title and Registration – Statement of Vehicle Sale for the purpose of registration and the transfer of title to the Jeep to Mr. Pop. **(Exhibit 3)**

42.     Title and ownership of the Jeep passed to Mr. Pop when the Application for Michigan Title and Registration – Statement of Vehicle Sale (Form RD-108) was signed by Mr. Pop on November 15, 2021. *Perry v. Golling Chrysler Plymouth Jeep, Inc.*, 477 Mich 62, 65 – 67 (2007)

43.     The RD-108 prepared by Brookfield reflects a security interest in the Jeep by Michigan State University Federal Credit Union ("MSUFCU") effective November 15, 2021.

44.     Upon discovery of a broken taillight, Brookfield advised Mr. Pop that he could return his Jeep at a later date to have it repaired by the service department of Brookfield at no cost to Mr. Pop. **(Exhibit 4)**

45.     Mr. Pop was provided with information necessary for Mr. Pop to obtain insurance on the Jeep which he obtained. **(Exhibit 5)**

46.     Mr. Pop advised the sales representative that he would not take possession of Jeep until Brookfield received a license plate and registration for the Jeep.  The sales representative indicated that this would not be a problem and he would contact Mr. Pop when the plate and registration were received by Brookfield.

47.     Shortly thereafter, Mr. Pop received a call from Brookfield stating that the license plate and registration had been received. Mr. Pop and his wife drove to Brookfield to pick up the Jeep.

48.     A Brookfield representative attached the license plate to the Jeep and provided to Mr. Pop the registration, the RISC, and related documents.

49.     Mr. Pop was advised by the sales representative that he should receive a "coupon book" in the near future prior to his first monthly installment payment which was due December 30, 2021.

50.     Mr. Pop was told that he should receive the title to the Jeep in the mail from the Secretary of State.

51.     Mr. Pop was given the keys to the Jeep and he drove it off the Brookfield lot.

52.     Mr. Pop received in the mail the title to the Jeep issued on November 26, 2021. **(Exhibit 6)**

53.     Shortly after December 30, 2021, Mr. Pop went to the Brookfield dealership and indicated to a representative that he had not received a coupon book and he was there to make his first monthly payment to Brookfield or to whomever they directed.

54.     Mr. Pop was advised by Brookfield personnel that payment was not necessary, and someone would get back to him.

10

55.     Approximately one month later in early February 2022, Mr. Pop returned to the Brookfield dealership and advised that he had not heard from them, had not received a coupon book and was there to make his required monthly payment.

56.     A Brookfield representative asked Mr. Pop where the Jeep was located as Mr. Pop had not driven the Jeep to the Brookfield dealership. Mr. Pop advised that the Jeep was at his home.

57.     The Brookfield representative advised Mr. Pop that payment of the monthly installment was not necessary but asked Mr. Pop to return to Brookfield on a specific date and at a specific time.

58.     Mr. Pop returned on the requested date and time in February 2022, in a vehicle other than the Jeep.

59.     Mr. Pop was asked by a Brookfield representative why he did not drive the Jeep to the meeting as he needed to return the Jeep to Brookfield.

60.     Mr. Pop asked why they wanted the Jeep back.  The representative stated that they needed the Jeep back or "there would be big case filed against you." The representative told Mr. Pop that a mistake in the paperwork had been made by the original salesman who had been fired.

61.     The Brookfield representative had a "stack of papers" with him and told Mr. Pop he needed to come into the dealership to sign some papers.  Mr. Pop advised that he was not going to sign any papers as he had already signed papers and the Jeep was his.

62.     Mr. Pop reiterated that he was not bringing the Jeep back to the dealership, to which the Brookfield representative advised that "they would find it."

63.     Mr. Pop left the dealership and had no further communication with Brookfield.

64.     On information and belief, MSUFCU refused to purchase the RISC from Brookfield.

11

65.     On information and belief, Brookfield attempted to sell the RISC to a different third-party investor but was not successful.

66.     On information and belief, Brookfield attempted on two occasions to have the Jeep repossessed from Mr. Pop by towing/recovery companies, neither of which was successful.

67.     On information and belief, Brookfield contacted its insurance carrier to file an insurance claim for coverage based upon a claim the Jeep had been stolen.

68.     On information and belief, the insurance carrier required Brookfield to submit a stolen vehicle police report for the insurance claim to be considered and processed. On information and belief, the insurance claim was denied.

**Prosecution**

69.     On or about April 14, 2022, Brookfield personnel contacted the Benton Township Police Department to make a stolen vehicle report involving the Jeep which was sold to Mike Pop approximately five months earlier on November 15, 2021.

70.     On April 14, 2022, Officer Alex Povenz was dispatched to the Brookfield dealership to take a report of a stolen vehicle.

71.     Officer Povenz met with Defendant Andrew Beam and Defendant Austin Froberg.

72.     On information and belief, the source of which is Benton Township Police Incident Report No. 22-003397, Officer Povenz was provided information by Beam and Froberg including, but not limited to:

a. On November 15, 2021, they were making a vehicle sale to Mike Pop.

b. There was a "typo with the paperwork in that the financing paperwork stated that the vehicle of the sale was to be an unknown Dodge Pickup truck."

12

c. Mike Pop "left the area after signing paperwork for a 2021 Jeep Gladiator."

d. The financing paperwork for the Jeep was "denied by the bank."

e. Beam had several conversations with Mike Pop, the last one of which was February 22, 2022.

f. Beam advised that Mike Pop told him that he would not be sending other information to the bank, would not be sending any money to Brookfield, and would not be returning the vehicle.

73.    Officer Povenz was provided with a copy of the fully signed Retail Installment Sales Contract dated November 15, 2021, between Mr. Pop and Brookfield for the Jeep which was attached to his report. **(Exhibit 2).**

74.    Officer Povenz was also provided with a copy of the Brookfield prepared RD 108 for the Jeep, requesting that the Secretary of State transfer title to and register the Jeep in the name of Mike Pop. **(Exhibit 3)** The RD 108 was attached to his report.

75.    Beam signed a Benton Township Police Department Stolen Car Prosecution Form, Complaint #: 22-3397. **(Exhibit 7)**

76.    The Stolen Car Prosecution Form signed by Beam states in relevant part:

**I, Andy Beam (vehicle registered owner),** do hereby verify that **my** 2021 Jeep Gladiator (vehicle description) **has been taken without my permission and that I intend to prosecute** any and all persons found responsible **for taking my vehicle.** I further verify that all information listed below is factual to the best of my knowledge.

***

**I know who took my vehicle,** however, **this person was not given any permission to take the vehicle from me** and I understand that I will be required to testify in court in regards to this matter to prosecute the person(s) responsible for keeping my vehicle from me for my lawful use. The person(s) who took my vehicle are listed below:  Mike Pop

***

I authorize the entry of this vehicle into the Michigan Law Enforcement Information Network and the National Crime Information Center. I understand that by authorizing this to take place, I am also agreeing to testify in court and **cooperate in any way necessary to prosecutor person(s) responsible for taking my vehicle.**

**(Exhibit 7)** (emphasis added)

77.    Thereafter, Officer Povenz completed a Stolen Vehicle/Plate Worksheet listing the "owner" of the Jeep as Brookfield Chrysler – Dodge – Jeep – Ram. **(Exhibit 8)**

78.    From and after November 15, 2021, and on April 14, 2022, Mike Pop was the "owner" of the Jeep as defined in MCL 257.37(b) and (c) in that:

a.    He was "a person who holds the legal title of a vehicle" MCL 257.37(b). **(Exhibit 6)**; and

b.    He was a "person who has the immediate right of possession of a vehicle under an installment sale contract" MCL 257.37(c). **(Exhibit 2)**

79.    Officer Povenz, as a law enforcement officer, had electronic access to the Michigan Secretary of State motor vehicle records which, on April 14, 2022, would have verified that the Jeep was titled and registered to Mike Pop.

80.    Officer Povenz was provided with information and documentation by Brookfield identifying the address and telephone number of Mike Pop.

81.    Upon information and belief, Officer Povenz did not electronically access the Michigan Secretary of State records regarding ownership of the Jeep and did not contact or attempt to contact Mike Pop at his home or by telephone, prior to reporting the Jeep stolen in the Law Enforcement Information Network system and seeking a warrant for the arrest of Mike Pop for the felony crime of unlawful driving away of an automobile.

82.     The crime of unlawful driving away of an automobile ("UDAA") is set forth in MCL 750.413, which provides:

> Taking possession of and driving away of a motor vehicle – any person who shall, **willfully and without authority**, take possession of and drive or take away, and any person who shall assist in or be a party to such taking possession, driving or taking away of any motor vehicle, **belonging to another**, shall be guilty of a felony, punishable by imprisonment in the state prison for not more than 5 years.

(emphasis added)

83.     On or about April 14, 2022, Officer Povenz signed under oath a Complaint seeking a warrant charging Mike Pop with UDAA allegedly occurring on November 15, 2021. **(Exhibit 9)**

84.     The Complaint was provided to Berrien County Prosecutor, Joshua Starr, who authorized the issuance of an arrest warrant on April 21, 2022.  **(Exhibit 10)**

85.     On or about April 22, 2022, Scott Kreiner, a law enforcement officer with the Benton Township Police Department acted as the complaining witness on a felony complaint **(Exhibit 10)** and, on information and belief, appeared before Berrien District Court Magistrate Robert Clark. On information and belief, the Magistrate signed the felony warrant for Mike Pop's arrest, authorizing a cash bond of $2,000 (although such is not in the Court file).

86.     Upon information and belief, the arrest warrant information was placed in the Law Enforcement Information Network system.

87.     Between November 15, 2021, and November 8, 2022, Mike Pop was never contacted by any law enforcement personnel advising that the Jeep had been reported stolen or that a felony warrant had been issued for his arrest.

**Arrest**

88.     In October 2022, Mike Pop went to a branch office of the Michigan Secretary State to renew the registration on the Jeep.

89.     Mr. Pop was advised by a representative of the Michigan Secretary of State that they could not renew his registration as the vehicle had been reported as stolen by law enforcement in Benton Harbor.

90.     Mr. Pop went to the Benton Harbor Police Department to find out why the Jeep had been reported stolen and was advised that he should contact the Benton Township Police Department.

91.     On November 8, 2022, Mr. Pop drove to the Benton Township Police Department.

92.     Mr. Pop made contact with Defendant Evan Smith.  Mr. Pop provided his driver's license and a copy of the RISC to Sergeant Smith.

93.     Smith left Mr. Pop in his truck and went into the police station.  Smith utilized the information provided to access the Benton Township Police Department TALON system, which directed Smith to the incident report authored by Officer Povenz.

94.     Sergeant Smith came out of the police station approximately 10 minutes later to speak with Mr. Pop. Mr. Pop advised Smith that he bought the Jeep from Brookfield and signed the appropriate paperwork for the Jeep.

95.     Mr. Pop advised Smith that the Jeep belonged to him as it was titled and registered to him.

96.     Sergeant Smith had immediate electronic access to records of the Michigan Secretary of State motor vehicle records where Mr. Pop's ownership of the Jeep would have been confirmed.

97.     Sergeant Smith demanded that Mike Pop get out of his truck whereupon Smith advised Mr. Pop that he was under arrest, patted him down and placed him in handcuffs.

98.     Mr. Pop was transported by Smith to the Berrien County Jail where he was "booked" and taken into custody including being fingerprinted, photographed, patted down, swabbed for DNA testing, told to strip naked and searched before he was placed in a holding cell with several other individuals.

99.     Mr. Pop was advised by jail personnel that he could post a $2,000 cash bond for his release.

100.    Mr. Pop was allowed to contact his wife who posted a $2,000 cash bond at the Berrien County Jail.  **(Exhibit 11)**

101.    Mr. Pop was released from custody at 2:00 p.m. on November 8, 2022.

102.    Mr. Pop was provided with a notice that he was to appear on December 1, 2022, at 1:30 p.m. at the Berrien County Courthouse. **(Exhibit 11)**

103.    Mr. Pop appeared on December 1, 2022, and was arraigned by Magistrate Robert Clark.

104.    Mr. Pop was advised of his rights and provided a bail bond with conditions including that he could not drink alcohol, not go to bars, would submit to alcohol or drug tests as directed, and was put on a curfew from 8:00 p.m. to 8:00 a.m. **(Exhibit 12)**

105.    Mr. Pop was ordered to appear for a Preliminary Examination on December 15, 2022.

106.    On December 14, 2022, Victor Bland, retained counsel for Mr. Pop, filed a motion to dismiss the criminal charge, which included documentation demonstrating that Mr. Pop is and was the registered and title owner of the Jeep since November 2021.

107.    On December 15, 2022, the Berrien County Prosecutor requested that the case be dismissed and it was dismissed. An Order *Nolle Prosequi* was signed by the Court on December 21, 2022. **(Exhibit 13)**

**Seizure of the Jeep**

108.    On or about December 14, 2022, the day before the scheduled preliminary examination, Officer Povenz contacted the Van Buren County Sheriff's Department and requested assistance in recovering, and to "be on the lookout," for the Jeep. He provided an address for Mr. Pop.

109.    Defendant Deputy Greg Gunther ("Deputy Gunther" or "Gunther") went to the area of Mr. Pop's address but could not locate the address he was given by Officer Povenz.

110.    Defendant Deputy Anthony Turner ("Deputy Turner" or "Turner") overheard the dispatch transmission to Deputy Gunther and proceeded to the area of Mr. Pop's home address.

111.    Deputy Turner verified through electronic means that Mike Pop's home address was across the street from the address provided to Deputy Gunther by Officer Povenz.

112.    The driveway entrance to Mr. Pop's home is protected by a locked gate. Deputy Turner and Deputy Gunther eventually made contact with Mr. Pop's wife who was tending her garden. Mrs. Pop was asked if Mike Pop lived there, which she confirmed.

113.    They advised Mrs. Pop that they were there to get the Jeep and asked if Mr. Pop was home. She advised that he was not home and provided a phone number to contact him.

114.    Mr. Pop was contacted by telephone by one of the Deputies, was told it was about the Jeep and he agreed to meet with the Deputies at his home.

115.    Mrs. Pop was asked if she had any paperwork regarding the Jeep.  She provided to Turner a copy of the RISC for the Jeep. The Deputies left and returned approximately 30 minutes later, followed immediately by Mr. Pop.

116.    Mr. Pop confirmed that the Jeep was on his property, but he was not willing to consent to the Deputies entering the gate or to release the Jeep.  Mr. Pop explained that he had already been arrested for allegedly stealing the Jeep and the criminal case was pending.

117.    Deputy Turner and/or Deputy Gunther advised Mr. Pop that he needed to unlock the gate and give them the Jeep, or he would be arrested.

118.    Mr. Pop advised Deputy Turner and Deputy Gunther that he was not letting them on his property or releasing the Jeep and they should go ahead and arrest him.

119.    Mr. Pop's wife and son, who were inside the gate, pleaded with Mr. Pop to just let them have the Jeep, rather than be arrested and once again taken to jail.

120.    Based upon the threat of arrest and the tearful pleas of his family, Mr. Pop relented, said they could take the Jeep and opened the gate.

121.    Deputy Turner contacted Mike's Towing and the Jeep was removed from the property.

122.    Brookfield eventually obtained title to the Jeep through false representations to the Michigan Secretary of State Office and sold and/or transferred title to Edward Becker.

123.    Turner and Gunther had not requested or obtained a search warrant or other court order authorizing them to enter Mr. Pop's property or seize the Jeep.  Turner and Gunther had no basis to arrest Mr. Pop if he refused access to his property or refused to surrender the Jeep.

124.    Thereafter, Sergeant Pentlan of the Van Buren County Sheriff's Department contacted Officer Povenz and advised that the Jeep had been towed by Mike's Towing and he could contact Brookfield the following day regarding the seizure.

125.    On December 15, 2022, Officer Povenz contacted Beam at Brookfield and advised that the Jeep had been seized and was being held at Mike's Towing facility.

126.    Thereafter, Brookfield made arrangements for the Jeep to be removed from Mike's Towing and transported to the Brookfield dealership.

127.    Thereafter, Brookfield, by its representative, Claudia Reyna, submitted Michigan Secretary of State form TR-34 (certification) to the Michigan Secretary of State, falsely stating:

> We Brookfield Chrysler Dodge Jeep is applying for a lost title for this vehicle.  We repo this vehicle from Mike Pop.  Bank never approved his deal, customer said he never received title.  Vehicle is still in our lot for sale.  We are still the owners of this vehicle.

**(Exhibit 15).**

## COUNT I
## EQUAL CREDIT OPPORTUNITY ACT (ECOA)
## DEFENDANT BROOKFIELD

128.    Plaintiff repeats paragraphs 1 through 127 as if fully set forth herein.

129.    Plaintiff is an "applicant" as the term is defined in the ECOA, 15 U.S.C. § 1691a(b).

130.    Defendant Brookfield is a "creditor" as the term is defined in the ECOA, 15 U.S.C. 1691a(e).

131.    Plaintiff Mike Pop completed a credit application and applied to Brookfield for credit in connection with the purchase of the 2021 Jeep Gladiator from Brookfield and purchased

from Brookfield that Jeep pursuant to Brookfield extension of credit pursuant to the RISC **(Exhibit 2)**.

132.     Defendant Brookfield denied Plaintiff credit and/or revoked Plaintiff's credit, refusing to honor the RISC, which denial and/or revocation constituted "adverse action" as the phrase is defined in the ECOA, 15 U.S.C. §1691(d)(6), by, among other things, refusing to honor the RISC and rejecting payment.

133.     Defendant Brookfield failed to provide Plaintiff with a notice of adverse action as required by the ECOA, 15 U.S.C. § 1691(d).

WHEREFORE, Plaintiff seeks judgment against Defendant Brookfield for:

  (a)     A declaratory judgment that Brookfield has violated the Equal Credit Opportunity Act, 15 U.S.C. § 1691e(c);

  (b)     Actual damages pursuant to 15 U.S.C. § 1691e(a);

  (c)     Punitive damages in an amount not to exceed $10,000.00, pursuant to 15 U.S.C. § 1691e(b);

  (d)     Costs of this action, together with a reasonable attorney's fee, pursuant to 15 U.S.C. § 1691e(d); and,

  (e)     Such further legal or equitable relief as the Court deems appropriate.


## COUNT II
## FAIR CREDIT REPORTING ACT (FCRA)
## DEFENDANT BROOKFIELD

134.     Plaintiff repeats paragraphs 1 through 133 as if fully set forth herein.

135.     Plaintiff is a "consumer" as the term is defined in the FCRA, 15 U.S.C. § 1681a(c).

136.     Defendant Brookfield is a "person" as the term is defined in the FCRA, 15 U.S.C. § 1681a(b).

137.    Brookfield took "adverse action" as the phrase is defined in the FCRA, 15 U.S.C. § 1681a(k), with respect to Plaintiff Mike Pop, based in whole or in part on information contained in a consumer report.

138.    Defendant Brookfield willfully failed to provide Plaintiff with a notice of adverse action as required by the FCRA, 15 U.S.C. § 1681m, thereby violating 15 U.S.C. § 1681n.  In the alternative, Defendant Brookfield negligently failed to provide Plaintiff with a notice of adverse action as required by the FCRA, 15 U.S.C. 1681m, thereby violating 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff seeks judgment against Defendant Brookfield for:

(a)    A declaratory judgment that Brookfield has violated the Fair Credit Reporting Act;

(b)    Actual damages pursuant to 15 U.S.C. § 1681n(a)(1) and/or § 1681o(a)(1);

(c)    Statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

(d)    Punitive damages in an amount not to exceed $10,000.00, pursuant to 15 U.S.C. § 1681n(a)(2);

(e)    Costs of this action, together with a reasonable attorney's fee, pursuant to 15 U.S.C. § 1681n(a)(3) and/or § 1681o(a)(2); and,

(f)    Such further legal or equitable relief as the Court deems appropriate.

### COUNT III
### MICHIGAN MOTOR VEHICLE SALES FINANCE ACT (MVSFA)
### DEFENDANT BROOKFIELD

139.    Plaintiff repeats paragraphs 1 through 138 as if fully set forth herein.

140.    Brookfield is an "installment seller" and a "seller" as the terms are defined in the MVSFA.  Brookfield is a "holder" as the term is defined in the MVSFA.  Plaintiff is an "installment buyer" and a "buyer" as the terms are defined in the MVSFA.

22

141.     The MVSFA states: "An installment sales contract shall be in writing and shall contain all of the agreements between the buyer and the seller relating to the installment sale of the motor vehicle sold, and shall be signed by both the buyer and the seller." M.C.L. § 492.112(a).

142.     The MVSFA states: "An installment sales contract shall not be signed by a party unless it contains all of the information and statements required by this act." M.C.L. § 492.114(a).

143.     The MVSFA states: "An installment sales contract shall not contain a provision by which a buyer waives a right of action against the seller, holder, or other person acting on behalf of the holder for an illegal act committed . . . in the repossession of a motor vehicle . . . " M.C.L. § 492.114(d).

144.     The MVSFA states: "No act, agreement or statement by any buyer in any installment sale contract shall constitute a valid waiver of any provision of this act intended by the legislature for the benefit and protection of retail installment buyers of motor vehicles." M.C.L. § 492.132.

145.     The MVSFA requires that each retail installment contract shall separately disclose the various terms of credit, including the motor vehicle's cash price, amount of down payment, unpaid cash price balance, cost of any insurance or travel emergency benefits procured by the seller, other necessary or incidental costs which the seller contracts to pay on behalf of the buyer, principal amount financed, amount of the finance charge, the time balance and the amount and due date of each payment required.  M.C.L. § 492.113.

146.     Defendant Brookfield did not comply with the disclosure requirement of the MVSFA because it represented to Mr. Pop that it had unconditionally guaranteed to him on the terms specified in the RISC, when in fact, and according to Brookfield, the information was false,

inaccurate and misleading because the granting of credit on the disclosed terms was conditioned upon Defendant Brookfield's ability to sell the retail installment sales contract to a third-party investor.

147. Defendant Brookfield failed to disclose the finance charge to Plaintiff Mike Pop as required by the MVSFA because the purported extension of credit, according to Defendant Brookfield, was conditional and, therefore, illusory.

WHEREFORE, Plaintiff seeks judgment against Defendant Brookfield for:

(a) A declaration that Brookfield has violated the MVSFA by claiming the extension of credit to Plaintiff was conditioned upon Brookfield's ability to sell the retail installment sales contract to a third-party investor;

(b) A declaration that Brookfield's claim that it did not extend credit to Plaintiff under the terms of the retail installment contract and/or that the extension of credit to Plaintiff under the terms of the retail installment sales contract was conditioned upon a subsequent event, that is, that Brookfield's ability to sell the retail installment sales contract to a third-party investor, was unenforceable and a violation of the MVSFA;

(c) An injunction prohibiting Brookfield from further violations of the MVSFA;

(d) Reasonable costs, attorney's fees, and pre-judgment and post-judgment interest; and,

(e) Such further legal or equitable relief as the Court deems appropriate.


**COUNT IV**
**BREACH OF CONTRACT**
**DEFENDANT BROOKFIELD**


148. Plaintiff repeats paragraphs 1 through 147 as if fully set forth herein.

149.     Plaintiff entered into the retail installment sales contract with Defendant Brookfield with set terms regarding price, financing, payment and possession of the 2021 Jeep Gladiator. **(Exhibit 2)**

150.     The foregoing contract terms were material to Plaintiff Mike Pop.

151.     The retail installment sales contract contained no language making the contract conditional upon Brookfield's success in selling the contract to an investor or other third-party.

152.     Alternatively, any alleged agreement between Brookfield and Plaintiff Mike Pop that contained language making the contract conditional upon Brookfield's success in selling the contract to an investor or other third-party was unlawful and unenforceable.

153.     On two occasions, Mike Pop timely tendered monthly payment to Brookfield, which were refused by Brookfield.

154.     Plaintiff Mike Pop performed or attempted to perform all conditions required of him under the retail installment contract.

155.     Brookfield breached its contract with Mr. Pop.

156.     Each breach of the contract was material.

157.     Plaintiff Mike Pop has suffered loss as a result of Brookfield's breach of contract.

WHEREFORE, Plaintiff seeks judgment against Defendant Brookfield for:

      (a)     A declaratory judgment that Brookfield's practices constitute a breach of contract;
      (b)     Actual damages;
      (c)     Costs;
      (d)     Recoverable attorney's fees;
      (e)     Such further legal or equitable relief as the Court deems appropriate.

## COUNT V
## MICHIGAN UNIFORM COMMERCIAL CODE
## DEFENDANT BROOKFIELD

158.     Plaintiff repeats paragraphs 1 through 157 as if fully set forth herein.

159.     Defendant Brookfield violated Article Nine of the MUCC, M.C.L. § 440.9101, *et seq.*, when it took possession of Plaintiff Mike Pop's Jeep, contrary to the default and repossession provision remedies of Article 9 of the Uniform Commercial Code.

160.     Plaintiff Mike Pop suffered loss as a result of Defendant Brookfield's multiple violations of the MUCC.

WHEREFORE, Plaintiff seeks judgment against Defendant Brookfield for:

(a)     A declaratory judgment that Defendant Brookfield's practices violate the Michigan Uniform Commercial Code;
(b)     Actual damages;
(c)     Statutory damages of an amount of not less than the credit service charge, plus 10% of the principal amount of the debt, or the time-price differential plus 10% of the cash price, pursuant to the MUCC.
(d)     Costs of this action, together with reasonable attorney's fees; and,
(e)     Such further legal or equitable relief as the Court deems appropriate.
(f)

## COUNT VI
## COMMON LAW CONVERSION AND STATUTORY TREBLE DAMAGES
## DEFENDANT BROOKFIELD

161.     Plaintiff repeats paragraphs 1 through 160 as if fully set forth herein.

162.     At all times relevant hereto, Plaintiff Mike Pop had the exclusive right to the immediate possession of the 2021 Jeep Gladiator.

163.     Defendants Brookfield converted Plaintiff's 2021 Jeep Gladiator.

164.    Defendants Brookfield knowingly converted Plaintiff's 2021 Jeep Gladiator.

165.    Defendants Brookfield received and possessed Plaintiff's 2021 Jeep Gladiator.

166.    Defendants Brookfield received and possessed the 2021 Jeep Gladiator knowing it had been converted.

167.    The conversion of the 2021 Jeep Gladiator was to Defendant Brookfield's own use.

168.    Defendants Brookfield refused to return the 2021 Jeep Gladiator to Mr. Pop.

169.    Defendants Brookfield refused to return the 2021 Jeep Gladiator to Mr. Pop, knowing that the automobile had been converted.

170.    Plaintiff Mike Pop has suffered loss as a result of the conversion of the 2021 Jeep Gladiator.

WHEREFORE, Plaintiff seeks judgment against Defendant Brookfield for:

(a)    A declaratory judgment that the Defendant's practices constituted conversion of Plaintiff Mike Pop's 2021 Jeep Gladiator.

(b)    Actual damages for common law conversion, equal to fair market value of the vehicle at the time of conversion.

(c)    Treble damages pursuant to MCL 600.2191a calculated as three times the fair market value of the vehicle at the time of conversion.

(d)    Costs pursuant to MCL 600.2919a.

(e)    Recoverable attorney fees pursuant to MCL 600.2919a.

(f)    Such further legal or equitable relief as the Court deems appropriate.

**COUNT VII**
**§ 1983 – CIVIL RIGHTS VIOLATION**
**FALSE ARREST AND IMPRISONMENT**
**DEFENDANT POVENZ**

171.    Plaintiff repeats paragraphs 1 through 127 as if fully set forth herein.

172.    Plaintiff, Mike Pop, has the right to be free from unreasonable searches and seizures as guaranteed by the Fourth and Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

173.    At all times relevant hereto, Officer Povenz was employed by the Benton Township Police Department as a law enforcement officer and was acting under color of state law within the course and scope of his employment.

174.    On or about April 14, 2022, Povenz went to Brookfield to take a report and gather information concerning someone stealing a vehicle from Brookfield.

175.    Brookfield representatives, Beam and Froberg, provided to Povenz materially false information which included, but was not limited to, that at the time of the alleged theft on November 15, 2021, Beam was the "registered owner" of a 2021 Jeep Gladiator and that he did not give permission to Mike Pop to drive the Jeep away from the Brookfield dealership. **(Exhibit 7)**

176.    Even if it was intended by Beam or was assumed by Povenz that the statements were made by Beam in a representative capacity, the statements were not credible and/or were false.

177.    Povenz knew, had reason to know, or recklessly disregarded contrary facts in his possession that such information was not credible and/or was false.

178.    The circumstances, facts, documents, and information readily available to Officer Povenz on April 14, 2022, were not sufficient to warrant a prudent person or one of reasonable caution to believe that Mike Pop committed, was committing, or was about to commit the crime of unlawful driving away of an automobile ("UDAA").

179.    When Mike Pop drove the Jeep away from the Brookfield dealership on or after November 15, 2021, there was no probable cause to believe that:

   a.    The Jeep belonged to or was owned by Beam, Brookfield, or anyone other than Mike Pop;

   b.    Driving the Jeep away was without the permission of Brookfield; and

   c.    Pop intended to take the Jeep without authority, knowing that he did not have authority or permission to take the Jeep and drive it away.

180.    Without probable cause to believe that a crime had been committed or that Mike Pop committed it, Povenz took steps to report the Jeep as stolen in the Law Enforcement Information Network.

181.    Povenz then prepared an affidavit in support of his request for a warrant charging Mike Pop with UDAA. Povenz knew that the information provided therein was not from a credible source, was false, or was in reckless disregard of the truth.  Further, Povenz intentionally and recklessly omitted exonerating facts in the affidavit which were known or should have been known by Povenz.

182.    Povenz knew or should have known that his affidavit, which contained false, misleading, and non-credible facts and his intentional or reckless withholding of exonerating facts, could or would be relied upon by the prosecutor in authorizing a warrant and a judicial officer in issuing a warrant for Mike Pop's arrest for the felony crime of UDAA.

183.     The conduct of Officer Povenz violated clearly established law.

184.     As a direct, proximate, and foreseeable result of seeking a warrant lacking in probable cause, Mike Pop was arrested on November 8, 2022, and was imprisoned in the Berrien County Jail.

185.     As a direct, proximate, and foreseeable result of Mike Pop's false arrest and false imprisonment, Mike Pop has suffered loss and damages including, but not limited to:

   a.     Extreme mental and emotional distress and injuries;
   b.     Physical manifestations and injuries arising out of the extreme mental and emotional distress;
   c.     Fright, shock and terror;
   d.     Humiliation, embarrassment, and mortification;
   e.     Medical and health care costs and expenses;
   f.     Unnecessary attorney fees incurred to defend his wrongful criminal prosecution in the amount of $3,500;
   g.     Other compensable and consequential damages and injuries which may become apparent;
   h.     Recoverable exemplary damages;
   i.     Punitive damages;
   j.     Attorney fees pursuant to 42 U.S.C. §1988 and related statutes;
   k.     Expenses and costs of litigation recoverable under applicable federal statutes and court rules; and
   l.     Such other legal and equitable relief to which Plaintiff is found entitled.

**COUNT VIII**
**§ 1983 – CIVIL RIGHTS VIOLATION**
**MALICIOUS PROSECUTION**
**DEFENDANT POVENZ**

186.     Plaintiff repeats paragraphs 1 through 127 and paragraphs 171 through 185 as if fully set forth herein.

187.    Plaintiff, Mike Pop, has the right to be free from malicious prosecution as guaranteed by the Fourth and Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

188.    A criminal prosecution was initiated against Mike Pop.

189.    Officer Povenz made, influenced, or participated in the decision to prosecute Mike Pop.

190.    There was a lack of probable cause for the criminal prosecution.

191.    The criminal proceeding was resolved in Mike Pop's favor. **(Exhibit 13)**

192.    As a direct and foreseeable consequence of the criminal proceeding, Mike Pop was arrested, incarcerated, and otherwise suffered a deprivation of his liberty.

193.    The conduct of Officer Povenz and the malicious prosecution of Mike Pop violated clearly established law.

194.    As a direct, proximate, and foreseeable result of the conduct of Officer Povenz, Mike Pop suffered loss and damages including, but not limited to those losses and damages more fully set forth in paragraph 185 a. – l. which are incorporated herein.


**COUNT IX**
**§ 1983 – CIVIL RIGHTS VIOLATION**
**FALSE ARREST AND IMPRISONMENT**
**DEFENDANT SMITH**

195.    Plaintiff repeats paragraphs 1 through 127 and paragraphs 171 through 194 as if fully set forth herein.

196.    Plaintiff, Mike Pop, has the right to be free from unreasonable searches and seizures as guaranteed by the Fourth and Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

197.    On or about November 8, 2022, Mike Pop went to the Benton Township Police Department to determine why his Jeep had been reported as stolen, where he encountered Defendant Sergeant Smith.

198.    Mike Pop provided Sergeant Smith with a copy of his driver's license and a copy of the RISC for the Jeep.

199.    Mike Pop advised Sergeant Smith that the Jeep belonged to him, he purchased it from Brookfield, and he did not steal the Jeep.

200.    Sergeant Smith accessed the TALON system and had access to the initial police report and related information prepared by Povenz, his fellow officer with the Benton Township Police Department.

201.    Sergeant Smith had immediate and reasonable electronic access to motor vehicle records of the Michigan Secretary of State.

202.    The records of the Michigan Secretary of State revealed or, if accessed, would have revealed to Sergeant Smith that Mike Pop was the registered owner and held title to the Jeep from and after November 15, 2021.

203.    The Affidavit submitted by Officer Provence seeking a warrant for Mike Pop's arrest for UDAA lacked probable cause to believe that a crime had been committed, that Mike Pop committed it and contained materially false information and which intentionally omitted material exonerating information.

204.    On November 8, 2022, Sergeant Smith had significant and material exculpatory information, documents, and immediate access to electronically stored information demonstrating that the warrant for Mike Pop's arrest lacked probable cause or that there was then probable cause to arrest Mike Pop.

205.    Sergeant Smith knew, should have known, or recklessly disregarded facts in his possession, that the warrant and he lacked probable cause to arrest Mike Pop.

206.    Sergeant Smith arrested Mike Pop without probable cause and transported him to the Berrien County Jail where Mike Pop was incarcerated.

207.    The conduct of Sergeant Smith violated clearly established law.

208.    As a direct, proximate, and foreseeable result of his false arrest and imprisonment, Mike Pop has suffered loss and damages including, but not limited to those losses and damages more fully set forth in paragraph 185 a. – l. which are incorporated herein.

**COUNT X**
**§ 1983 – CIVIL RIGHTS VIOLATION**
**WARRANTLESS SEARCH AND SEIZURE**
**DEFENDANTS ALEX POVENZ, GREGORY GUNTHER AND ANTHONY TURNER**

209.    Plaintiff repeats paragraphs 1 through 127 and paragraphs 171 through 208 as if fully set forth herein.

210.    Plaintiff, Mike Pop, has the right to be free from unreasonable searches and seizures guaranteed by the Fourth and Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

211.    On or about April 14, 2022, Officer Povenz lacked probable cause to believe that the Jeep had been stolen by Mike Pop.  Without probable cause to believe that the Jeep was stolen by Mike Pop or anyone else, Officer Povenz prepared a Stolen Vehicle/Plate Worksheet listing the "owner" of the Jeep as Brookfield Chrysler-Dodge-Jeep-Ram. **(Exhibit 8)**

212.    Officer Povenz knew or should have known or in reckless disregard of known facts, that Brookfield was not the "owner" of the Jeep and that Mike Pop had permission to drive the Jeep away from the Brookfield dealership.

213.    Despite lacking probable cause and having clear exculpatory and contrary facts, Officer Povenz submitted to the Law Enforcement Information System and/or the Michigan Secretary of State documents and information that the Jeep was a stolen vehicle.

214.    Officer Povenz knew, should have known, anticipated, and specifically intended that, by filing a report of a stolen vehicle in the LEIN system and/or with the Michigan Secretary of State any law enforcement officer would rely upon said information and seize the vehicle and deprive Mike Pop, as a documented owner of the vehicle, of his right to be free from unreasonable searches and seizures and would deprive Mike Pop of his property without due process of law.

215.    On or about December 14, 2022, Officer Povenz affirmatively requested the assistance of Defendants Gunther and Turner in locating, searching for, and seizing the Jeep without probable cause and without securing a search warrant.

216.    On or about December 14, 2022, Defendants Gunther and Turner went to the home of Mike Pop for the purpose of locating and seizing the Jeep.

217.    Gunther and Turner had not applied for or secured a warrant to enter Mike Pop's property to search for and/or seize the Jeep.

218.    There existed no exigent or other circumstances which would allow for a warrantless entry and search of Mike Pop's home or property.

219.    Gunther and Turner were provided with a copy of a RISC signed by Brookfield and Mike Pop and had electronic access to Michigan Secretary of State motor vehicle records, each of which was exculpatory to any information provided to Gunther and Turner that the Jeep was or had, at any time, been stolen by Mike Pop.

220.    Mike Pop refused to give consent to Gunther and Turner to enter his property and seize the Jeep.

221.    Gunther and/or Turner threatened to immediately arrest Mike Pop if he refused to consent to a search for and seizure of the Jeep.  Such threat was made to Mike Pop in the presence of Mike Pop's wife and son.

222.    The eventual consent by Mike Pop to allow the search of his property and seizure of the Jeep was not voluntary and was the sole result of the threat, intimidation and coercion of Gunther and Turner.

223.    Gunther and Turner had no probable cause whatsoever to effect a warrantless arrest of Mike Pop. The threat to arrest Mike Pop was made maliciously for the sole purpose of intimidating and coercing Mike Pop to consent to an otherwise illegal and warrantless search of Mike Pop's property and seizure of the Jeep.

224.    The Jeep was seized by Gunther and Turner utilizing Mike's Towing to remove the Jeep from Mike Pop's property.

225.    The conduct of Povenz, Gunther and Turner violated clearly established law.

226.    The conduct of Povenz, Gunther and Turner violated Mike Pop's rights to be free from warrantless and unreasonable searches and seizures and the taking of property without due process of law in violation of the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

227.    As a direct, proximate, and foreseeable result, Mike Pop has suffered loss and damages including, but not limited to, those losses and damages more fully set forth in paragraph 185 a. – l. which are incorporated herein.

## COUNT XI
## STATE LAW CLAIM MALICIOUS PROSECUTION DEFENDANTS BROOKFIELD, BEAM AND FROBERG

228.    Plaintiff repeats paragraphs 1 through 127 and paragraphs 171 through 227 as if fully set forth herein.

229.    Defendants Beam and Froberg, individually and/or as authorized agents and representatives of Brookfield, contacted the Benton Township Police Department to report a 2021 Jeep Gladiator as having been stolen from Brookfield.

230.    Beam and Froberg met with Officer Povenz.  Beam and Froberg provided information and documentation to Officer Povenz and otherwise caused or initiated criminal proceedings against Mike Pop.

231.    Certain information provided by Beam and Froberg to Officer Povenz was false and misleading.

232.    Beam and Froberg knew or should have known that the information was false or provided the information in reckless disregard of the truth.

36

233.    Beam and Froberg, individually and on behalf of Brookfield, intentionally, willfully, and maliciously withheld material facts and information from Officer Povenz including, but not necessarily limited to the facts set forth in paragraphs 25 through 68 above, incorporated herein.

234.    Beam, Froberg and Brookfield lacked probable cause for initiating or continuing the criminal proceeding against Mike Pop.

235.    The criminal proceeding against Mike Pop was terminated in his favor.  **(Exhibit 13)**

236.    Beam and Froberg initiated and continued the criminal proceeding against Mike Pop with actual malice and for a primary purpose other than that of bringing an offender to justice.

237.    As a direct, proximate and foreseeable result of the malicious prosecution by Brookfield, Beam, and Froberg, Mike Pop was arrested, imprisoned, and his property was seized without due process of law.

238.    As a direct, proximate, and foreseeable result the conduct of these Defendants, Mike Pop has suffered loss and damages including, but not limited to those losses and damages more fully set forth in paragraph 185 a. – g. and k.- l. as if fully set forth herein together with recoverable costs and attorney fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Mike Pop, requests a judgment as follows:

A.  Compensable and consequential damages to which Plaintiff is found entitled in excess of $75,000.

B.  Treble damages pursuant to MCL 600.2919a against.

C.  Exemplary damages to which Plaintiff may be found entitled.

D.  If compensable and consequential damages are not awarded, nominal damages at a minimum for violation of constitutional rights.

E.  Punitive damages recoverable on Plaintiff's federal statutory claims.

F.  Plaintiff's reasonable attorney fees pursuant applicable state and federal statutes including, but not limited to, MCL 600.2919a - State conversion claim and 42 U.S.C. §1988 and related statutes on Plaintiff's federal claims under 42 U.S.C. §1983.

G.  Expenses and costs of litigation recoverable under applicable federal and state statutes and the federal and Michigan court rules.

H.  Such other legal and equitable relief to which Plaintiff is found entitled.

## **JURY TRIAL**

Plaintiff hereby demands a trial by jury.

Dated: November 9, 2023                   _/s/ Anthony J. Valentine (P32840)_
                                          Anthony J. Valentine (P32840)
                                          Attorney at Law
                                          Co-Counsel for Plaintiff
                                          29 Pearl Street, NW, Ste. 227
                                          Grand Rapids, MI 49503
                                          (616) 288-5410
                                          _tonyvalentinelaw@gmail.com_


Dated: November 9, 2023                   _/s/ Steven J. Vander Ark (P32471)_
                                          Steven J. Vander Ark (P32471)
                                          Co-Counsel for Plaintiff
                                          29 Pearl Street NW, Ste. 145
                                          Grand Rapids, MI 49503
                                          (616) 288-5410
                                          _steve.vanderark@gmail.com_